**Harry P. DAVIS, Jr., Plaintiff,**

v.

**Eddie REYNOLDS and James Greek, Defendants.**

**Civ. A. No. 1530.**

United States District Court, N. D. Florida, Tallahassee Division.

June 10, 1970.

Don Dansby, Perry, Fla., for plaintiff.

Horace A. Knowlton, III, Asst. Atty. Gen., Tallahassee, Fla., for defendant.

Before SIMPSON, Circuit Judge, and ARNOW and MIDDLEBROOKS, District Judges.

## OPINION—ORDER

MIDDLEBROOKS, District Judge.

This cause is before this duly constituted three-judge panel in which plaintiff seeks declaratory relief pursuant to Title 28, United States Code, Section 2281 to have Rule 165–8.02(11) promulgated by the Florida Game and Fresh Water Fish Commission declared unconstitutional as violative of his Fourth Amendment right against unreasonable searches and seizures.

The facts of this case may be summarized as follows: Plaintiff, a passenger in his brother's vehicle, was traveling through a lawfully designated game management preserve, to-wit: the Hickory Mound impoundment area, when plaintiff and his brother were approached and stopped by the defendant wildlife officers to check the vehicle for dogs and guns as provided for by Chapter 165–8 of the Florida Rules 'and Regulations. Plaintiff resisted this attempt of the officers to inspect the vehicle and after a scuffle ensued, the vehicle was searched over the protest of plaintiff. Having found no illegal contraband, the defendants released plaintiff and his brother, but the following day they swore out a warrant for plaintiff's arrest and charged plaintiff with obstructing wildlife officers in pursuit of their duties. Thereafter, this action was filed in which plaintiff sought not only permanent injunctive and declaratory relief, but also pecuniary damages sustained as a result of the altercation between plaintiff and defendant Greek.

The threshold issue before this Court is whether there is in fact a substantial constitutional question presented in the complaint. In Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968), Chief Judge Brown set forth the rule to be followed in this Circuit when considering the

wisdom in convening a three-judge court:

"In this day and time of dynamic expansion of constitutional principles and their application to new and sometimes unheard of situations it takes judicial prescience of a Delphic order to say with certainty that the attack is insubstantial. It is the better course—certainly from an administrative standpoint—to forego the doubts, constitute a 3-judge court, and allow that court to determine initially this and the other issues." *Ibid.* at p. 913.

Guided by that rule, this Court, sitting as a single judge, made application for the convening of a three-judge court. Briefs now having been filed, the three-judge court, without formally and physically convening in one place, may consider the issue of the substantiality of the constitutional question at this stage of the proceedings and make the appropriate determination of law. *Ibid.* Having studied the briefs and memoranda of law submitted and having given careful consideration to the arguments of counsel, this Court is of the opinion that there is no substantial constitutional question present.

Examination of the regulation challenged in this cause reveals that the administrative intent in promulgating the regulation was to assist in the enforcement of conservation of state natural resources and that the scope and application of the regulation was limited and confined to designated areas within the state. The purpose then of this regulation is not penal. Rather, it was designed to give state officers a right to inspect vehicles in their enforcement of conservation laws and not to afford them a means to circumscribe the guarantees and protections of the Fourth Amendment so that a warrantless search and seizure could be made without there having been made a predetermination of probable cause. This conclusion seems reasonable when read in light of Florida Statutes, Section 372.76.

Moreover, a careful study of existing law reveals that there are instances when the procedural safeguards and requirements of the Fourth Amendment are less stringent than might ordinarily be expected. In other words, there is ample authority to sustain the constitutionality of the regulation on its face so that state action under this regulation is not a basis for relief under Title 28, United States Code, Section 2281; and further, that any search or inspection conducted pursuant to this regulation would not in and of itself amount to deprivation of plaintiff's rights, privileges and immunities secured by the Constitution of the United States. See United States v. Crowley, 9 F.2d 927 (N.D.Ga.1922); United States v. Grisby, 335 F.2d 652, 655 (4th Cir. 1964); United States v. Greenhead, 256 F.Supp. 890 (N.D.Calif.1966); United States v. Donato, 269 F.Supp. 921 (E.D. Pa.1967); Moore v. Student Affairs Committee of Troy State University, 284 F.Supp. 725 (M.D.Ala.1968); United States v. Coles, 302 F.Supp. 99 (N.D. Me.1969).

The general thrust of these cases is that where a search is made to maintain order or discipline, to maintain security or to prevent the entry of forbidden articles into a designated area, then a warrantless search is proper even though probable cause may be negligible or absent. See *Grisby,* supra, 335 F.2d at p. 655.

As was stated earlier, the purpose of the regulation is to assist in the enforcement of conservation laws and to keep forbidden articles or things out of the game management area. This particular public need when balanced against the private need of an individual plaintiff may sometimes be far greater so that violation of a constitutionally protected right is not found. In *Greenhead,* supra, the Court there considered the efforts of the California Wildlife Service to protect that state's natural resources and proclaimed:

"Their efforts ought not be stultified by grossly expanded concepts of the

right of privacy." *Ibid.*, 256 F.Supp. at p. 894.

That this statement is particularly suited to the case at bar seems all too clear for in its factual composition this case becomes a right to privacy case since no seizure was involved as a result of the search and plaintiff only complains of his right to be free from unfettered intrusion of his privacy. Balancing the need of plaintiff to that of the public, one finds that the latter has the overriding consideration and that the search or inspection of the vehicle was not unreasonable.

Although this Court finds some merit in the "implied consent" argument advanced by defendants, this Court finds that there is more substantial authority on which to bottom its conclusions:

"In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, Mr. Justice Jackson stated:

'There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed.' (333 U.S. at 14–15, 68 S. Ct. at 369)

Implicit in that statement of a balancing test is the concept that as the facts of the case approach the periphery of privacy, the requirements demanded of an officer are correspondingly less exacting. * * *" *Greenhead*, supra, at p. 893.

Going still further, the Court in *Troy State*, supra, observed that where utilization of a regulation is a necessary exercise of responsibility in order to maintain an "educational atmosphere", then the regulation must stand even though it might infringe "on the outer bounds of the Fourth Amendment rights of students". *Ibid.*, 284 F.Supp. at p. 729. Hence it seems equally plausible that the regulation here should not fall when it is necessary to the maintaining of a spe-cially protected area and enforcement of legitimate state interests.

In short, this Court finds that the regulation presently in force does not authorize unreasonable searches and that it is necessary to the enforcement of Florida conservation laws. Consequently, when considered in light of the above authority, the Fourth Amendment standards applicable to this factual situation are lower than those applicable in a prosecutory action. Thus, plaintiff's presence in the game management area diminished his right to privacy when the state's need to conserve natural resources is considered. This case, then, easily falls within those enumerated cases where Fourth Amendment standards have been relaxed to promote the public welfare and security.

Lastly, this Court has subjected this regulation to a narrowing construction to sustain its validity. In addition, it has also been guided by the pronouncements made in United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) where the Court said never to anticipate a question of constitutional law and never to formulate a constitutional rule which exceeds the "precise facts" of the case.

It is therefore, upon consideration, hereby ORDERED:

It thus appearing to this District Court constituted as a three-judge court pursuant to an order of the Chief Judge of the United States Court of Appeals, Fifth Circuit, but reserving to that three-judge court the right to determine whether this case is properly one for a three-judge court (see the order of Chief Judge Brown dated February 20, 1970, and filed in the office of the Clerk of this Court February 24, 1970) and this Court, determining that this cause is not one presenting a substantial constitutional question for a three-judge court as delineated in Mayhue's Super Liquor Store v. Meikeljohn, 426 F.2d 142, 5th Cir. 1970, denies the injunctive relief sought by the complaint and re-

mits this cause to the single judge to whom the application was made for his hearing, determination and disposition of the independent federal claim under Title 42, United States Code, Section 1983 for damages.

It is so ordered.